# United States District Court

NORTHERN DISTRICT OF GEORGIA

ORIGINAL

UNITED STATES OF AMERICA
v.

SHARON PETERS

(Name and Address of Defendant)

**CRIMINAL COMPLAINT**

CASE NUMBER: 1:13-MJ-182

FILED IN CHAMBERS
FEB 11 2013
U.S. MAGISTRATE JUDGE
N.D. GEORGIA

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief.

In or about November 2012, in the Northern District of Georgia, the defendant did,

attempt to possess with intent to distribute cocaine, a Schedule II controlled substance, and possess a firearm in furtherance of a drug trafficking crime

in violation of Title 21, United States Code, Section 841 and Title 18, United States Code, Section 924(c).

I further state that I am a agent of the Federal Bureau of Investigation (FBI) and that this complaint is based on the following facts:

See Attached Affidavit

Continued on the attached sheet and made a part hereof.        (X) Yes ( ) No

Signature of Complainant
James P. Hosty, IV

Based upon this complaint, this Court finds that there is probable cause to believe that an offense has been committed and that the defendant has committed it. Sworn to before me, and subscribed in my presence

February 11, 2013                                         at    Atlanta, Georgia
Date                                                              City and State

Alan J. Baverman
United States Magistrate Judge
Name and Title of Judicial Officer                                Signature of Judicial Officer
AUSA Brent A. Gray

## AFFIDAVIT IN SUPPORT OF ARREST WARRANT
## FOR SHARON PETERS

I, James P. Hosty, IV, being duly sworn, depose and state the following:

1. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed for approximately 7 years. I am currently assigned to the Atlanta, Georgia office and work on the Civil Rights/Human Trafficking/Public Corruption Squad, which has the responsibility for investigating police corruption, among other federal crimes. I am a law enforcement officer of the United States, FBI, U.S. Department of Justice, within the meaning of Title 18, United States Code, Section 3052, which includes being an officer of the United States who is empowered by law to conduct investigations and make arrests for offenses pursuant to Title 18, United States Code, Section 3052.

2. During my law enforcement career, I have participated in dozens of investigations relating to drug trafficking and police corruption. I have received specialized training in the methods and techniques used by drug trafficking organizations. I have debriefed many witnesses and confidential informants about drug trafficking generally, as well as the specific practice of employing corrupt law enforcement officers as part of a drug trafficking scheme. Through this training and experience, I have become familiar with many of the patterns of activity exhibited by drug traffickers. Except where I state that I am relying on my training and experience as described here, the information in this affidavit is based on information and belief, the source of that information and basis for that belief being my own investigation and information obtained by other law enforcement agents.

3. I submit this affidavit in support of a warrant for the arrest of SHARON PETERS for attempted possession with the intent to distribute cocaine in violation of Title 21, United States

Code, Section 841, and possession of a firearm in furtherance of a drug trafficking crime in violation of Title 18, United States Code, Section 924(c).

## BACKGROUND OF INVESTIGATION

4. Based on my training and experience, I know that sophisticated drug trafficking groups distribute narcotics using a variety of covert methods that are designed to avoid detection by law enforcement and others. If detected, they are aware law enforcement will seize the drugs and money and arrest them. They also know that other drug dealers or criminal groups will rob them, if given a chance, stealing both the drugs and money. In the worst case, drug deals can turn violent.

5. Given these risks, drug traffickers occasionally attempt to enlist law enforcement officers to provide protection both for them and the drug transactions they conduct. In employing corrupt police officers at a drug deal, the traffickers hope to prevent rival groups from intervening and ultimately stealing their drugs and the drug proceeds. Additionally, they hope to keep legitimate law enforcement at bay by positioning a visible law enforcement presence at or near the drug transactions. In these cases, drug traffickers are willing to pay thousands of dollars to corrupt law enforcement officers who will provide protection for these transactions.

6. In August, 2011, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) was investigating a street gang in the Metro Atlanta area. During the course of that investigation, a confidential informant (CI-1) provided information about the gang's criminal activities. CI-1 told federal agents that police officers were involved in protecting the gang's activities, including their drug trafficking crimes. In general, these police officers, in uniform, driving police vehicles or otherwise displaying indicia of their positions, protected the drug dealers from being detected or arrested by other law enforcement officers and from being robbed by other drug dealers. The

information provided to federal agents by CI-1 regarding the use of law enforcement officers to protect drug deals is consistent with my experience and training in the investigation of similar cases.

7.  CI-1, who had been working with federal agents since August, 2011, communicated to gang members and their associates that CI-1 would need police protection for his/her upcoming drug transactions. Shortly thereafter, Shannon Bass, Jerry B. Mannery, Jr., and Elizabeth Coss, none of whom are law enforcement officers, began identifying to CI-1 law enforcement officers interested in protecting his/her drug deals. Once those individuals were identified, information regarding the location and circumstances of the proposed drug deals was relayed to CI-1 and/or Shannon Bass, Jerry B. Mannery, Jr., Elizabeth Coss for him/her to pass along to law enforcement officers who expressed an interest in protecting the drug transactions.

## FACTS ESTABLISHING PROBABLE CAUSE

8.  On two separate occasions in November, 2012, SHARON PETERS provided protection for what she believed to be drug transactions involving multiple kilograms of cocaine.

9.  SHARON PETERS is employed by Paragon Systems, Inc., and in November, 2012, was contracted by the Federal Protective Service to provide security at various United States government facilities. Peters wears a uniform and carries a firearm as part of her employment.

10. <u>Meeting on November 18, 2012.</u> On November 18, 2012, FBI agents surveilled a meeting at a Waffle House restaurant, 8060 Rockbridge Road, Lithonia, Georgia, between SHARON PETERS, Jerry B. Mannery, Jr. and Shannon Bass. During this meeting, Mannery introduced SHARON PETERS to Bass as a federal agent who was interested in providing protection to drug dealers in exchange for payment. Bass told SHARON PETERS and Mannery that he planned to "move three blocks" in a future drug transaction. Bass asked SHARON PETERS and

Mannery to protect that transaction and provide mobile telephones to be used by them during the deal. This meeting was audio recorded.

11.   <u>Drug Transaction on November 19, 2012.</u>  On November 19, 2012, FBI agents surveilled a meeting between SHARON PETERS, Mannery, Bass and a confidential informant (CI-2) in the parking lot of a Marriott Hotel, 200 Interstate North Parkway, Atlanta, Georgia. Bass arrived at the hotel parking lot and was followed shortly by CI-2 who parked next to Bass. CI-2 got out of his/her vehicle carrying a backpack and got into Bass's vehicle. At that point, SHARON PETERS, who had just telephoned Bass and said that she "had her Glock," was parked near Bass's vehicle and appeared to be watching Bass's vehicle. Mannery was also parked nearby and appeared to be watching Bass's vehicle. Inside Bass's vehicle, Bass provided CI-2 a backpack containing three kilograms of counterfeit cocaine. In exchange, CI-2 gave Bass a backpack containing $7,000. CI-2 got out of Bass's vehicle with the backpack containing the counterfeit cocaine and left the parking lot. Then, Bass drove to a BP gas station, 2779 Windy Hill Road, Marietta, Georgia. At the BP station, Bass met Mannery and gave Mannery the $7,000 payment. Mannery told Bass that he would provide SHARON PETERS with "her cut" of the payment. Immediately thereafter, FBI agents observed Mannery meet with SHARON PETERS at a McDonald's restaurant, 2700 Windy Hill Road, Marietta, Georgia. These transactions were video recorded.

12.   <u>Meeting on November 27, 2012.</u>  On November 27, 2012, FBI agents surveilled a meeting at a Waffle House restaurant, 8060 Rockbridge Road, Lithonia, Georgia, between SHARON PETERS, Jerry B. Mannery, Jr. and Shannon Bass. During this meeting, the group discussed the logistics of a future drug transaction involving the delivery of three kilograms of cocaine and critiqued the November 19, 2012 drug transaction. This meeting was audio and video recorded.

13. <u>Drug Transaction on November 29, 2012.</u> On November 29, 2012, FBI agents surveilled a meeting between SHARON PETERS, Mannery, Bass and a confidential informant (CI-6) in the parking lot of a Costco store, 500 Brookhaven Avenue, Atlanta, Georgia. Bass arrived at the store parking lot and was followed shortly by CI-6 who parked next to Bass. CI-6 got out of his/her vehicle carrying a backpack and got into Bass's vehicle. At that point, SHARON PETERS, who had just told Bass that she was carrying a firearm, was parked near Bass's vehicle and appeared to be watching Bass's vehicle. Mannery was also parked nearby and appeared to be watching Bass's vehicle. Inside Bass's vehicle, Bass provided CI-6 a backpack containing three kilograms of counterfeit cocaine. In exchange, CI-6 gave Bass a backpack containing $7,000. CI-6 got out of Bass's vehicle with the backpack containing the counterfeit cocaine and left the parking lot. Then, Bass drove to a Quick Trip, 5347 Peachtree Industrial Boulevard, Atlanta, Georgia. At the Quick Trip, Bass met Mannery and gave Mannery the $7,000 payment. Bass then left the Quick Trip. Mannery remained at the Quick Trip. Shortly thereafter, FBI agents observed SHARON PETERS arrive and meet with Mannery. These transactions were audio and video recorded.

14. In communications leading up to and through the above-described drug transactions, the drug involved was described to SHARON PETERS as cocaine.

## CONCLUSION

15. Based on the foregoing, I submit there is probable cause to believe that SHARON PETERS attempted to possess with the intent to distribute cocaine, in violation of Title 21, United States Code, Section 841, and possessed a firearm in furtherance of a drug trafficking crime in violation of Title 18, United States Code, Section 924(c).

5